UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MORAN, Personal
Representative of the ESTATE OF
FRANKIE EDITH KEROUAC PARKER,
    Plaintiff,

v.

EDIE PARKER, LLC, EDIE PARKER
ACCESSORIES, LLC, and BRETT
HEYMAN,

    Defendants.

_____/

Case No. 20-cv-12717

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING MOTION TO DISMISS [7]**

Plaintiff, Timothy Moran, as Personal Representative of the Estate of Frankie Edith Kerouac Parker, filed this action against Defendants Edie Parker, LLC, Edie Parker Accessories, LLC, and Brett Heyman for the unauthorized use of the name "Edie Parker." Presently before the Court is Defendants' Motion to Dismiss. For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss.

**I.  Factual Background**

Frankie Edith Kerouac Parker, known to fans and friends alike as Edie Parker, was the first wife of acclaimed writer Jack Kerouac and a celebrity in her own right during the "Beat Generation" of the 1950s and 1960s. (*Complaint*, ECF No. 1-1, PageID.10.) According to Plaintiff, Ms. Parker was a style and fashion icon, an author, and a character in several of Jack Kerouac's books. (*Id.* PageID.11-12.)

Ms. Parker had a pivotal role in the life of Jack Kerouac and was interviewed in the 1986 documentary, *What Happened to Kerouac*? (*Id.* PageID.11.) And upon her death in

1

1993, the Wilson Library at the University of North Carolina at Chapel Hill purchased a collection of Ms. Parker's papers for approximately $85,000 with the intention of including them in a special collection of the library. (*Id.*) In 2007, Ms. Parker's memoir, *You'll Be Okay: My Life With Jack Kerouac*, was posthumously published by the historic City Lights of San Francisco. (*Id.*) Later, in 2013, Ms. Parker was portrayed by actress Elizabeth Olsen in the feature film, *Kill Your Darlings*. (*Id.* PageID.12.) For these reasons, Plaintiff states Ms. Parker's identity continues to carry significant good will and value even now, 27 years after her death.

In the complaint, Plaintiff provides the following facts leading to matter at hand:

Defendant Brett Heyman is extremely familiar with Ms. Parker and has read about her extensively. (*Id.*) Ms. Heyman is such a fan of Ms. Parker, that she named her daughter after her, giving her daughter the name "Edie Parker Heyman." (*Id.*)

In 2010, Ms. Heyman started the company, Edie Parker LLC without consulting Plaintiff or otherwise obtaining permission from Ms. Parker's estate to use her name. (*Id.*) In starting the company, Ms. Heyman sought to create goods that harkened back to the master crafts of the 1950s and 1960s. (*Id.*) In or around 2012, Ms. Heyman and her company, Edie Parker LLC, began selling high end handbags and accessories patterned after vintage styles favored by Ms. Parker. (*Id.* PageID.13.)

Because the name of the handbag line is identical to that of Ms. Parker's, and because it mimics Ms. Parker's style, consumers associate the company with Ms. Parker herself. (*Id.*) Ms. Heyman has even given interviews in which she characterized the name of her company as a nod to Ms. Parker and other "stylish Edies" from the mid-20th

2

century. (*Id.* PageID.13-14.) Ms. Heyman has also publicly declared that her company was named after her daughter, Edie Parker Heyman. (*Id.* PageID.13.)

Several publications, including Forbes and Vanity Fair, have reported the association between Defendants' stylish goods and the chic Ms. Parker. (*Id.* PageID.14, 15.) This association has been very beneficial for Defendants and they have sold tens of millions of dollars of products under their various Edie Parker lines. (*Id.* PageID.17.)

Through one count of infringement of the right of publicity,[1] under Michigan common law, Plaintiff's complaint seeks to enjoin Defendants from doing business as Edie Parker or continuing to sell products under Ms. Parker's name. (*Id.* PageID.18.) Additionally, Plaintiff seeks damages, restitution, and "disgorgement of all profits" earned through the use of Ms. Parker's name or persona. (*Id.*)

In the present motion, Defendant seeks dismissal of this action based upon Defendants' trademark of "Edie Parker" in association with their various products.

---

[1] The Complaint also mentions Ms. Parker's "privacy rights" (ECF No. 1-1, PageID.17 ¶ 50) and "unlawful infringement of Ms. Parker's privacy, publicity or other intellectual property rights," (*Id.* PageID.18), but the right to privacy, as opposed to the right of publicity, is personal and ceases after death. *See Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 325 (6th Cir. 2001) ("The right of privacy, which protects the right to an individual's self-esteem and dignity, typically ends at death."); *Estate of Manolios v. Macomb Cty.*, 2018 U.S. Dist. LEXIS 98934, *26 (E.D.Mich. 2018)("A dead man retains no right to privacy after his death."), *aff'd*, 785 F. App'x 304 (6th Cir. 2019).

Defendants ask the Court to take judicial notice of their trademark registrations[2,3] and argue that the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, (the "Act") preempts Plaintiff's Michigan common law claim. Alternatively, Defendants argue that Plaintiff's claim should be time-barred and ask this Court to certify a question to the Michigan Supreme Court to determine the time limitation on a *post-mortem* right of publicity.

## II.   Legal Standard

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

---

[2] Per the declaration filed by counsel concurrently with Defendants' response (ECF No. 8) and a second declaration filed alongside their reply (ECF No. 13), Defendants ask the Court to take judicial notice of the following public records of the United States Patent and Trademark Office ("USPTO"): (1) For each of the three incontestable registrations, four documents: (a) a printout from the Trademark Electronic Search System ("TESS") of the USPTO, accessible online at tess2.uspto.gov; (b) a copy of the registration issued by the USPTO; (c) a copy of the Combined Declaration of Use and Incontestability under Sections 8 and 15; and (d) a copy of the USPTO's acknowledgment of the filing of the Combined Declaration of Use and Incontestability under Sections 8 and 15; (2) For each of the five registrations that have not reached incontestable status, two documents: (a) a printout from the TESS of the USPTO, accessible online at tess2.uspto.gov; and (b) a copy of the registration issued by the USPTO; (3) For the mark FLOWER BY EDIE PARKER, two documents: (a) a printout from the TESS of the USPTO, accessible online at tess2.uspto.gov; and (b) a copy of the registration issued by the USPTO; (4) a copy of the license recorded with the USPTO whereby Edie Parker LLC licensed the FLOWER BY EDIE PARKER trademark to co-defendant Edie Parker Accessories LLC, along with the filing receipt.

[3] Defendants also ask the Court to take judicial notice of a letter from Plaintiff sent through counsel in January 2016. (ECF No. 8-22.) Because the letter is not a public record and does not otherwise fall into a category of documents that this Court may consider in support of a motion to dismiss, the Court denies this request.

A plaintiff's factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility refers to "when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). However, "a court ruling on a motion to dismiss may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

**B.  Judicial Notice**

The Federal Rules of Evidence allow a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (citing Fed. R. Evid. 201(b)). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, "[j]udicial notice is only appropriate if 'the matter [is] beyond reasonable controversy." *Id.* (citing Fed. R. Evid. 201(b) advisory committee's note).

5

III.   **Analysis**

Defendants argue Plaintiff's common law right of publicity claim is preempted by the Lanham Act because Defendants secured their exclusive right to use "Edie Parker" by obtaining eight federal trademarks, three of which have become incontestable. *See* 15 U.S.C. § 1115(b) ("To the extent that the right to use the registered mark has become incontestable . . . the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.")

To understand the context of Defendants' argument, it is necessary to pause and consider the law under which Plaintiff brings his claim. The right of publicity "protects an individual's pecuniary interest in the commercial exploitation of his or her identity." *Hauf v. Life Extension Foundation*, 547 F. Supp. 2d 771, 778 (W.D. Mich. 2008) (citing *Ruffin–Steinback v. dePasse,* 82 F.Supp.2d 723, 729 (E.D. Mich. 2000), *aff'd* 267 F.3d 457 (6th Cir. 2001)). Michigan recognizes the right to the extent it does not implicate matters of public concern, and holds that "any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another." *Battaglieri v. Mackinac Center for Public Policy,* 680 N.W. 2d 915, 919 (Mich. Ct. App. 2004). Although Michigan courts have yet to speak on whether the right of publicity survives the death of an individual, the Sixth Circuit Court of Appeals has predicted the state would continue to recognize the right *post-mortem* as it "is more properly analyzed as a property right and, therefore, is descendible." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 326 (6th Cir. 2001). Be that as it may, neither the

6

Sixth Circuit nor any other court has considered how long such a *post-mortem* right of publicity survives under Michigan law.

Taking the facts alleged in the complaint as true, as the Court must under these circumstances, it would seem Plaintiff has stated a claim under Michigan law (assuming, of course, that such a claim could survive *post-mortem* for 27 years). Defendant Heyman greatly admired Ms. Parker, named her child after the star, and started a line of businesses to produce fashionable items that would have seamlessly blended into the Beat Generation. As Plaintiff sees it, in the minds of consumers, Defendants' chic products absorb and reflect Ms. Parker's style and allude to her celebrity. Thus, on the back of Ms. Parker's fame, Defendants have turned a profit amounting to tens of millions of dollars without regard to the rights of Ms. Parker's heirs.

If Plaintiff were given the opportunity to prove these allegations, perhaps Ms. Parker's estate could have collected a portion of Defendants' business profits, or perhaps Plaintiff could have prevented Defendants from doing any business at all. But that is not the case here because, as mentioned above, Defendants have registered the trademark EDIE PARKER as their own. Thus, federal law is necessarily implicated by Plaintiff's state-law claim.

"Congress can preempt state law either expressly or impliedly." *Robbins v. New Cingular Wireless PCS, LLC.*, 854 F.3d 315, 319 (6th Cir. 2017). "Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law." *Id.* Even where a law is not expressly preempted, however, courts may find "implied preemption" if a "state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

7

It is worth noting that federal preemption of a state law need not be all-or-nothing; a state law may be preempted on one set of facts but not another. *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004) (Michigan statute which immunized drug manufacturers from products-liability but created an exception to the immunity for manufacturers that mislead the FDA in seeking approval, was pre-empted by federal law "in some settings . . . but not in others.") *See Jackson v. Roberts*, 972 F.3d 25 (2d Cir. 2020), 972 F.3d at 37-38 (noting that "many right of publicity claims" would not be preempted by the Copyright Act, but the plaintiff's claim was preempted under those circumstances.) Thus, a court's finding that federal law preempts a certain state law does not necessarily foreclose future claims or recovery under that state law.

Under these facts, Plaintiff's right-of-publicity claim is impliedly preempted by the Lanham Act. "Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985). "Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them." *Id.*

Congress spelled out its goals in the Lanham Act itself:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; *to protect registered marks used in such commerce from interference by State, or territorial legislation*; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names,

>and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127 (emphasis added).

The system of federal registration of trademarks is an important part of achieving these goals. Although federal law does not create trademarks, *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017), and unregistered marks can still be enforced under both federal and state laws, *id.* at 1752-53, federal registration "confers important legal rights and benefits on trademark owners who register their marks." *Id.* at 1753. Among other things, federal registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." *Id. See* 15 U.S.C. § 1057(b).

As a preliminary matter, the Court finds the USPTO documents described by Defendants through their counsel's declarations are public records and therefore may be considered. *See, e.g.*, *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 636 (E.D. Mich. 2014) (taking judicial notice of copyright registrations, articles of incorporation, and state records on a motion to dismiss); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir.2005) (noting that courts have taken judicial notice of trademark registrations); *Kaplan, Inc. v. Yun,* 16 F.Supp.3d 341, 345 (S.D.N.Y.2014) ("[T]he Court may take judicial notice of official records of the United States Patent and Trademark Office."); *Brown v. Bridges*, 2016 WL 3660666, at *2 (N.D. Tex. Jan. 26, 2016) (Solis, J.), *aff'd*, 692 F. App'x 215 (5th Cir. 2017) (taking judicial notice of trademark registration documents as public records under Federal Rule of Evidence 201).

9

Defendants therefore have the "exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the[ir] certificate[s]." *Matal*, 137 S. Ct. at 1751. Requiring Defendants to abandon these trademarks in the face of a common-law tort claim would utterly frustrate the goals of the Lanham Act. As such, applying "the state law [would be] an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Robbins*, 854 F.3d at 319.

Defendants secured their trademark rights in EDIE PARKER through eight federal registrations. The Michigan common law right of publicity cannot be used to deprive Defendants of their federally secured rights.

**C. Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 7.)

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 27, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager